**ORION INTERNATIONAL TECHNOLOGIES,**
Plaintiff,

v.

**The UNITED STATES, Defendant,**

and

**Fiore Industries, Inc., Intervenor.**

No. 04–250C.

United States Court of Federal Claims.

Filed under seal, April 7, 2004.

Reissued, April 22, 2004 [1].

---

1. This opinion was issued under seal on April 7, 2004. The parties were given an opportunity to propose redactions, and have proposed none. The opinion is now released to be published in its original form, with some minor, non-substantive corrections.

Kenneth A. Martin, McLean, Virginia, for Plaintiff.

Matthew P. Reed, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, all of Washington, D.C., for Defendant. Capt. Charles Bucknor, Department of the Army, Arlington, Virginia, of Counsel.

Carolyn Callaway, Albuquerque, New Mexico, for Intervenor.

## *OPINION AND ORDER*

WOLSKI, Judge.

Plaintiff, Orion International Technologies ("Orion") protests the award of a contract to the Intervenor, Fiore Industries, Inc. ("Fiore"), under Solicitation No. DABK30–03–R–0013 ("the Solicitation"). The Solicitation was issued by the Army Contracting Agency of the United States Department of the Army ("the Army"), seeking an independent contractor to manage and provide staff to support the Center for Countermeasures ("the Center"). *See* Solicitation §§ C.1.1, C.1.2, Administrative Record ("Admin.R.") at 196. The Center, located at the White Sands Missile Range in New Mexico, has the mission to assist the Office of the Secretary of Defense and the intelligence community "through analysis, testing and technical consulting regarding countermeasure and counter countermeasure technology." Solicitation § C.1.2, Admin. R. at 196. Orion was the incumbent contractor at the Center and an unsuccessful bidder under the Solicitation. On March 5, 2004, Orion's counsel submitted to this Court a Motion for Discovery. In

response, defendant United States ("the Government") submitted an Opposition to Plaintiff's Motion to Take Discovery, and Fiore submitted an Intervenor's Opposition to Plaintiff's Motion for Discovery.

Concerned that Orion might have been confused regarding the need to submit a memorandum of law in support of its Motion for Discovery, the Court issued an order on March 15, 2004, requesting that Orion address the legal arguments made by the Government and Fiore against Orion's motion. In response, Orion submitted Plaintiff's Reply to Defendant and Intervenor's Opposition to Plaintiff's Motion to Take Discovery.

Relating to the present motion, Orion alleges that Fiore impermissibly identified Mr. Harold H. Zucconi as its choice for Project Manager and Chief Engineer in its written bid submission to the Army, and in its oral presentation. Orion further alleges that the Army's final decisionmaker was aware that Mr. Zucconi would not be employed by Fiore under the contract, but disregarded this information while selecting a contractor. Orion further alleges that as a result of Fiore's representation that Mr. Zucconi was its future employee, Fiore was selected by the Army to receive the contract.

The discovery requested by Orion is as follows: depositions of Fiore's President, of Mr. Zucconi, and of the person proposed by Fiore as Mr. Zucconi's alternate, concerning employment commitments between Fiore and the proposed personnel; the deposition of the Army's Source Selection Authority ("SSA") for the Solicitation, concerning knowledge of Fiore's employment commitments with its proposed personnel, knowledge of Mr. Zucconi's availability to perform the role designated by Fiore, and the SSA's rationale for determining that Fiore's proposal was responsive to the Solicitation; and document production concerning the Army's hiring of Mr. Zucconi.

As the Court informed the parties in an on-the-record status conference held by telephone on March 25, 2004, and as more fully explained below, this motion is GRANTED–IN–PART and DENIED–IN–PART.

## BACKGROUND

Mr. Zucconi had been an employee of Orion since 1994, and Orion's Chief Engineer under its previous contract with the Center. Admin. R. at 986. In its Qualification Package responding to the Solicitation, Orion submitted Mr. Zucconi's résumé, and presented Mr. Zucconi as its Principal Engineer. Admin. R. at 982. In its oral presentation, Orion presented Mr. Zucconi as its Deputy Program Manager. Admin. R. at 283.

Mr. Felix Sanchez, President of Fiore, stated in a declaration that he received Mr. Zucconi's résumé in response to a blind advertisement.[2] Admin. R. at 637. Mr. Sanchez further stated that he contacted Mr. Zucconi in July, 2003, to see if he would work for Fiore if it were selected to perform the contract. *Id.* According to Mr. Sanchez, Mr. Zucconi stated that he would work for Fiore. *Id.* On August 27, 2003, Fiore submitted its Qualification Package stressing that "Mr. Zucconi has *committed exclusively* to the Fiore Team, beyond his current obligation to his current employer." Admin. R. at 752. In addition, Fiore's Qualification Package included Mr. Zucconi's résumé, presenting Mr. Zucconi as its "Project Manager/Chief Engineer (Fiore Contingent Hire)." Admin. R. at 783.

It is unclear from the documents presented by the parties if Mr. Zucconi gave Fiore any authorization to use his résumé in its Qualification Package, or whether Mr. Zucconi was aware that Fiore had used his résumé. According to Mr. Zucconi, however, he called Mr. Sanchez on September 3, 2004, and "requested that he not be included in his company's bid for the Center For Countermeasures Analysis contract" because he had signed an exclusive agreement with Orion. Admin. R. at 731. Mr. Sanchez states in his declaration that during this conversation, Mr. Zucconi said that he would work for Fiore in the event that Fiore won the contract, notwith-

---

**2.** The Government has stated that its counsel "is aware of a letter dated August 6, 2003, from Harold Zucconi to Fiore" expressing interest "in a program management position" at the Center.

Def.'s Opp'n Pl.'s Mot. Take Disc. at 12 n. 3. This letter is not currently a part of the Administrative Record.

standing the exclusive agreement with Orion.[3] Admin. R. at 637.

Possibly in response to Mr. Sanchez's September 3, 2004 conversation with Mr. Zucconi, Mr. Sanchez presented Mr. Robert Rossow as "Assistant Project Manager, Warfighter Analyst (Alternate Project Manager)" at Fiore's oral presentation on October 21, 2003, even though Mr. Rossow's résumé was not listed in Fiore's Qualification Package, and even though no one was listed in Fiore's Qualification Package as "Assistant Project Manager." Admin. R. at 261. Fiore's presentation included a slide indicating that Mr. Rossow would be the "On–Site Project Manager Designated PM until Mr. Zucconi assumes PM position after transition." *Id.* At the oral presentation, Mr. Sanchez called Mr. Zucconi the "one ideal candidate" for the Project Manager position, and stated that Mr. Zucconi had verbally agreed to accept the position if offered.[4]

On October 28, 2003, after the oral presentations, Mr. Michael Schuck, the Director of the Center and Source Selection Authority for the Solicitation, signed the Source Selection Authority Decision determining that Fiore represented the best value to the Army. Admin. R. at 3. Three months later, on January 26, 2004, Mr. Schuck allegedly announced that the Army had hired Mr. Zucconi to be the Technical Director for the Center. Compl. ¶¶ 31–32; Mem. Supp. Pl.'s Mot. Prelim. Inj. & T.R.O., Ex. 12.

### *Orion's Allegations*

Orion alleges misconduct on both the part of Fiore and the part of the Army, misconduct which resulted in Fiore being selected to perform the contract. Orion claims that Mr. Zucconi's presence on the Fiore management team was the decisive factor in Fiore receiving the contract. *See* Solicitation, § M.1(a),(b), Admin. R. at 59 (stating that the Army reserved the right to award the contract to other than the low offeror based on technical merit and price, with technical merit being considerably more important than price). According to Orion, Fiore materially overstated its technical credentials and capabilities by improperly proposing Mr. Zucconi as its Project Manager/Chief Engineer without Mr. Zucconi's knowledge or consent. Compl. ¶ 27. Furthermore, Orion argues that the Army should not have relied on Mr. Zucconi's presence on the Fiore management team because the Army was aware that it was itself about to hire Mr. Zucconi as the Technical Director of the Center, and, thus, knew he was not available to be Fiore's Project Manager/Chief Engineer.[5] Compl. ¶ 36.

Orion claims that the Army failed to enforce the Solicitation provision requiring Fiore's Project Manager to be present at the oral presentation of its bid. Compl. ¶ 37; *see* Solicitation, §§ L.1.4(b), C.1.5.1.2, Admin. R. at 56, 197. Orion also contends that the Solicitation required Fiore to provide written notification to the Army that it planned to substitute Mr. Rossow for Mr. Zucconi before making its oral presentation and required Fiore to demonstrate that Mr. Rossow's qualifications were generally equivalent to or better than the qualifications of Mr. Zucconi. Compl. ¶ 40; Pl.'s Reply Def.'s & Intervernor's Opp'ns Pl.'s Mot. Take Disc. ("Pl.'s Reply") ¶ 3; *see* Solicitation § H.6(b), Admin. R. at 45. In the alternative, Orion argues that, if Mr. Rossow was Fiore's proposed project manager at the time of the oral presentation, then Fiore failed to provide an alternate Project Manager pursuant to the Solicitation. Pl.'s Reply ¶ 3; *see* Solicitation § C.1.5.1, Admin. R. at 196. Therefore, Orion argues that the Government's selection

---

**3.** This exclusive agreement provided that, if Orion were unsuccessful in bidding on the Solicitation, Orion employees are "free to accept a position with the new contractor." Admin. R. at 671.

**4.** Videotape of Fiore Oral Presentation (Oct. 21, 2003).

**5.** *Cf. Home Box Office, Inc. v. FCC,* 567 F.2d 9, 54–55 (D.C.Cir.1977) (stating that when "an agency justifies its actions by reference only to information in the public file while failing to disclose the substance of other relevant information that has been presented to it, a reviewing *court cannot presume that the agency has acted properly, but must treat the agency's justifications as a fictional account of the actual decision-making process and must perforce find its actions arbitrary*") (citations omitted).

of Fiore for performance under the contract was contrary to the Solicitation. Compl. ¶ 10; *see* Solicitation § M.1(a), Admin. R. at 59 (stating that the Army "will make the award to the responsible contractor whose offer *conforming to the solicitation* will be most advantageous to the Government, price and other factors considered") (emphasis added).

Orion also claims that Fiore had an unfair advantage in the bid competition because Fiore obtained information on Orion's bid through Mr. Robert E. Symalla who, prior to his retirement on January 2, 2003, was the Deputy Director of the Center and also the Contracting Officer's Representative for the Orion contract. Compl. ¶¶ 12–21; *see* Admin. R. at 5–6, 306–08. In addition, Orion accuses Mr. Symalla of illegally lobbying Mr. Schuck on Fiore's behalf during a private dinner. Compl. ¶ 21; *see* Admin. R. at 6–7, 308, 320–21.

Finally, Orion suggests that the rating of Orion's presentation was arbitrary and capricious, arguing that the Army gave lower evaluation scores to portions of Orion's proposal despite the fact that the information disclosed in this proposal was substantively identical to Fiore's proposal. Compl. ¶ 39.

## DISCUSSION

The Administrative Record for this case was filed by the Government on March 2, 2004. This record consists of over one thousand pages of documents, including the Solicitation, the written submissions of Orion and Fiore, the notes of the Proposal Evaluation Board members, the decision of the Source Selection Authority, and the various papers that were filed during the pendency of Orion's protest before the GAO. It also includes

videotapes of the oral proposals made by Orion and Fiore.[6]

Orion seeks discovery regarding information that it contends is relevant to this Court's review but is not contained in the Administration Record. The information centers around Mr. Zucconi and his inclusion in Fiore's proposal. Orion seeks to show that Fiore never intended to hire Mr. Zucconi, knew he did not want to be associated with its proposal, and yet included him to make their proposal seem technically better based on his expertise and experience. Further, Orion hopes to show that the Army knew Fiore would not have Mr. Zucconi on its staff yet evaluated its proposal as if he would be in a key management role, and that the Army waived Solicitation requirements by finding Fiore's bid to be responsive despite Mr. Zucconi's inclusion and his failure to appear at Fiore's oral presentation.

### Review of Agency Decisions Generally Limited to Administrative Record

In all but exceptional cases, the evidence in cases challenging *formal* agency rulemaking brought under the Administrative Procedure Act ("APA")[7] is limited to materials contained in the administrative record. *Comty. for Creative Non–Violence v. Lujan*, 908 F.2d 992, 998 (D.C.Cir.1990); *Coalition on Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 72 (D.C.Cir.1987). The record produced during a formal adjudication or rulemaking, however, is different from a record of an informal agency decision.[8] In the case of an informal administrative decision, such as the award of a contract, the administrative record is merely "a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court." *Tech Sys., Inc. v. United States*, 50 Fed.Cl. 216,

---

6. The record as originally submitted inadvertently omitted two of four videotapes of the oral proposals of the bidders. The other two tapes were submitted the following week, and all four tapes were filed under seal on March 12, 2004.

7. 5 U.S.C. §§ 701–06. Bid protest cases in our Court are decided according to APA standards, 28 U.S.C. § 1491(b)(4).

8. *See, e.g., Pikes Peak Family Hous., L.L.C. v. United States*, 40 Fed.Cl. 673, 676 (1998) (recog-

nizing "a critical difference between the contemporaneous record compiled by an agency in the course of a formal adjudication or rulemaking proceedings under the APA, and the administrative record hospitably assembled by the agency for purposes of bid protest litigation, which is merely 'a post facto recreation of a procurement's documentary trail' ") (quoting *Alfa Laval Separation, Inc. v. United States*, 40 Fed.Cl. 215, 220 n. 6 (1998) *rev'd on other grounds*, 175 F.3d 1365 (Fed.Cir.1999)).

222 (2001). Our Court has gone so far as to call the administrative record of an informal agency decision "a fiction," because it is prepared by an agency after the decision has been made in response to questions about the validity of the decision or decision making process.[9] Indeed, "allowing the agency to retroactively delineate the scope of review may preclude the 'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform to determine whether the agency's action was arbitrary and capricious." *Mike Hooks, Inc. v. United States*, 39 Fed.Cl. 147, 156 (1997) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Nevertheless, the Court recognizes that even when it is required to review an administrative agency's informal action, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). But courts do not foreclose the supplementation of the record in all cases. *See id.* at 142–143, 93 S.Ct. 1241.

In the present case, there is lessened concern that the agency is presenting a one-sided view of events, as the Army's record of the decision has already been supplemented during Orion's bid protest at the General Accounting Office. *See Int'l Res. Recovery, Inc. v. United States*, 59 Fed.Cl. 537, 542

(2004). This Court takes the submitted GAO record as the administrative record to be considered. *SDS Int'l v. United States*, 48 Fed.Cl. 759, 765 (2001). Even so, the Court recognizes that in reviewing this record, it must reject "*post hoc* rationalizations" as a basis for the agency's action. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see also Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed.Cl. 502, 510 (2003).

■ Despite the previous supplementation of the record, the Court might allow further supplementation upon a showing of necessity. *Int'l Res. Recovery*, 59 Fed.Cl. at 542. While record supplementation will be tailored to each case, *Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed.Cl. 288, 293–94 (2000), this Court generally will only supplement the record for two basic reasons. First, supplementation might be necessary to help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision, particularly when a subjective value judgment has been made but not explained.[10] Second, the record may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record-such as evidence of bad faith,[11] information relied upon but

---

9. *See, e.g., Cubic Applications, Inc. v. United States*, 37 Fed.Cl. 345, 350 (1997) (stating that the administrative record is "something of a fiction" because "the agency has to exercise some judgment in furnishing the court with the relevant documents"); *Int'l Res. Recovery, Inc. v. United States*, 59 Fed.Cl. 537, 541 (2004) (quoting *Cubic Applications*, 37 Fed.Cl. at 350); *Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed.Cl. 502, 508 (2003) ("[T]he 'administrative record is a fiction'" that "is not a documentary record maintained contemporaneously with the events or actions included in it") (quoting *CCL Serv. Corp. v. United States*, 48 Fed.Cl. 113, 118 (2000), and *Tech Sys., Inc.*, 50 Fed.Cl. at 222); *Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed.Cl. 288, 293–94 (2000); *Aero Corp. v. United States*, 38 Fed.Cl. 408, 411 (1997); *GraphicData, L.L.C. v. United States*, 37 Fed.Cl. 771, 780 (1997) (stating that "a judge confronted with a bid protest case should not view the administrative record as a[n] immutable boundary that defines the

scope of the case"); *see also* Steven Stark & Sarah Wald, Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin. L.Rev. 333, 342 (1984) (stating that "the concept of a neatly organized record often is a legal fiction").

10. *See, e.g., Camp*, 411 U.S. at 142–43, 93 S.Ct. 1241; *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338–39 (Fed.Cir.2001); *Nat'l Treasury Employees Union v. Hove*, 840 F.Supp. 165, 168 (D.D.C.1994) *aff'd*, 53 F.3d 1289 (D.C.Cir.1995); *Myers Investigative*, 47 Fed.Cl. at 293–94; *Input/Output Tech., Inc. v. United States*, 44 Fed.Cl. 65, 69 (1999); *Pikes Peak*, 40 Fed.Cl. at 677.

11. *See, e.g., Galen Med. Assocs., Inc. v. United States*, 56 Fed.Cl. 104, 109 (2003) (allowing depositions because record was insufficient with regard to plaintiff's allegation of "a long pattern of questionable activity [that] might be relevant to prove agency bias"); *Cybertech Group, Inc. v.*

omitted from the paper record,[12] or the content of conversations.[13] The Court notes that while allegations of bad faith must rest on a strong evidentiary footing to overcome the normal presumption of regularity and good faith conduct by agency officials,[14] *see, e.g., CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1579–82 (Fed.Cir.1983) ("inferences of actual or potential wrongdoing" should be based on "hard facts," not "suspicion and innuendo"); *Libertatia Assocs., Inc. v. United States,* 46 Fed.Cl. 702, 706 (2000); *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1302 (1976); *Corel Corp. v. United States,* 165 F.Supp.2d 12, 35 (D.D.C.2001), a plaintiff needs more than innuendo or suspicion to entitle it to discovery seeking such evidence. *See Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1324 n. 2 (Fed.Cir.2003) (rejecting discovery when plaintiff "pointed to no record evidence of bias"); *Overton Park,* 401 U.S. at 420, 91 S.Ct. 814 (stating that "there must be a strong showing of bad faith or improper behavior" to require testimony of administrative decisionmakers); *Corel Corp.,* 165 F.Supp.2d at 31 n. 13; *cf. Wyatt v. United States,* 23 Cl.Ct. 314, 319 (1991) (requiring strong showing of bad faith to allow supple-

### Discovery Requested by Orion

Orion requests that the Court order the depositions of Mr. Sanchez, Mr. Zucconi, Mr. Rossow, and Mr. Schuck. In addition, Orion requests documents relating to the timing of the Army's offer to hire Mr. Zucconi for the position of Technical Director for the Center, and Mr. Zucconi's acceptance of this position. Orion requests this discovery to determine (1) whether Fiore and its representatives misrepresented the identities of its key employees in either its qualification package or its oral presentation to the Army; (2) whether the Government's decision was based on criteria that were not included in the Solicitation; and (3) whether the Government properly administered the Solicitation.

As discussed above, the Court's attention in bid protest discovery requests is normally directed to determining whether an agency's decision is fully explained, or to determining whether an agency acted in bad faith. Here, in addition to alleging wrongdoing on the part of the Army, Orion also alleges that Fiore committed fraud in presenting Mr.

*United States,* 48 Fed.Cl. 638, 651 (2001) (permitting depositions and other limited discovery); *Antarctic Support Assocs. v. United States,* 46 Fed.Cl. 145, 148 (allowing depositions of Government officials due to allegations of favoritism) *aff'd,* 251 F.3d 171 (Fed.Cir.2000).

12. *See, e.g., Myers Investigative & Sec. Servs., Inc. v. United States,* 47 Fed.Cl. 605, 615 (2000).

13. *See, e.g., Miller–Holzwarth, Inc. v. United States,* 44 Fed.Cl. 156, 158 (1999) (discovery concerning content of an alleged conversation); *DGS Contract Serv., Inc. v. United States,* 43 Fed.Cl. 227, 235 (1999) (allowing deposition concerning the "factual extent" of a telephone conference); *cf. GraphicData,* 37 Fed.Cl. at 780 (requiring government agency to disclose an electronic file that was not listed in the invitation but given to the successful bidder).

14. This presumption initially arose with regard to judicial determinations. *See The Confiscation Cases,* 20 Wall. 92, 87 U.S. 92, 112, 22 L.Ed. 320 (1873). It was subsequently adopted in the context of public officials acting under the police power of government, not their involvement in commercial activities such as procurement decisions. *See, e.g., United States v. Chem. Found.,*

*Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926) (decision to dispose of alien property seized from enemy nation); *Pac. States Box & Basket Co. v. White,* 296 U.S. 176, 185–86, 56 S.Ct. 159, 80 L.Ed. 138 (1935) (regulatory order standardizing produce containers); *Overton Park,* 401 U.S. at 415, 91 S.Ct. 814 (determination of route and design of interstate highway). This presumption has been imported into procurement law, *see, e.g., Librach v. United States,* 147 Ct.Cl. 605, 612 (1959); *P. Francini & Co. v. United States,* 2 Cl.Ct. 7, 11 (1983), where it remains a fixture of the APA standard of review. *See, e.g., Impresa Construzioni,* 238 F.3d at 1338; *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1085 (Fed.Cir.2001); *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1323 n. 2 (Fed.Cir.2003). This extension of the presumption to an area far removed from the police power appears to have gone unquestioned, *see, e.g., Torncello v. United States,* 231 Ct.Cl. 20, 45, 681 F.2d 756 (1982), even though the presumption is rooted in the rational basis deference given to policymaking. When agencies enter the arena of commercial transactions-an arena in which the actions of private parties are assumed to be shaped by incentives deriving from their financial interest-the rationale behind this presumption might appear less apt.

Zucconi as its employee, and is seeking discovery with respect to the Intervenor as well as the Army. Reflecting this fact, three of the four people that Orion requests to depose were not involved in making the agency decision, but rather are connected with the alleged fraud surrounding Fiore's bid. Orion's requested depositions of these three individuals are primarily relevant, if at all, to discover evidence that the successful bidder, Fiore, fraudulently presented Mr. Zucconi as its Program Manager and Chief Engineer.

### A. Mr. Felix Sanchez

■ Orion would like to depose Mr. Sanchez to answer the questions surrounding Fiore's decision to propose Mr. Zucconi as its On–Site Project Manager. Orion argues that information regarding Fiore's dealings with Mr. Zucconi is relevant to the current litigation to determine whether Fiore ever really intended to hire Mr. Zucconi as its Project Manager/Chief Engineer.

Orion contends that Fiore offered Mr. Zucconi as one of its "key personnel" without Mr. Zucconi's permission. Orion has cited GAO decisions to support its argument that if this allegation is true, the award of the contract to Fiore may need to be reevaluated, rejected, or terminated.[15] The issue not yet having been fully briefed, the Court takes no position at this time as to whether this Court, in exercising its powers under the Administrative Dispute Resolution Act of 1996, 28 U.S.C. § 1491(b)(1)-(4), may sustain a bid protest on these grounds, absent Army complicity.[16] But given this possibility, Mr. Sanchez's discussions with Mr. Zucconi, and the plans and contingent plans that he made based on these conversations may be relevant to the present litigation, and are not

something that would ever normally be found in an agency's record.

The Court must carefully tailor discovery in bid protest cases to reduce its intrusiveness and to limit it to matters that may lead to relevant evidence. With this in mind, the Court will not grant Orion's motion to depose Mr. Sanchez. Instead, the Court is allowing Orion to prepare interrogatories, to be answered by Mr. Sanchez in a signed declaration under oath. The interrogatories will be limited to Mr. Sanchez's conversations with Mr. Zucconi; any agreements they may have reached; Mr. Sanchez's personnel plans resulting from these conversations; and the timing as to when Mr. Sanchez learned that Mr. Zucconi was applying for, was offered, or accepted a position with the Army. As the Court informed the parties during the March 25, 2004 status conference, the Court has allowed Orion to submit draft interrogatories to the Court for the Court's review, approval, and possible modification, by April 2, 2004.

### B. Mr. Harold Zucconi

■ Orion would like to depose Mr. Zucconi, also seeking answers to the questions surrounding Fiore's decision to offer Mr. Zucconi as its On–Site Project Manager. The Court agrees to allow limited discovery from Mr. Zucconi, for the reasons stated above with respect to Mr. Sanchez, and also under the same conditions. Orion is allowed to prepare interrogatories, to be answered by Mr. Zucconi in a signed declaration under oath. The interrogatories will be limited to Mr. Zucconi's conversations with Mr. Sanchez; any agreements they may have reached; and the specifics of the process by which Mr. Zucconi obtained his current posi-

---

15. *See ManTech Advanced Sys. Int'l, Inc.,* 94–1 C.P.D. ¶ 326, at 5, 1994 WL 242282 (1994) ("[A]n offeror's misrepresentation concerning personnel that materially influences an agency's consideration of its proposal generally provides a basis for proposal *rejection or termination* of contract award based upon the proposal.") (citations omitted); *Ultra Tech. Corp.,* 89–1 C.P.D. ¶ 42, at 5, 1989 WL 240233 (1989) (recommending termination in absence of successful bidder's satisfactory explanation for using individual's names without permission); *Aerospace Design & Fabrication, Inc.,* 98–1 C.P.D. ¶ 139, at 5, 1998 WL 253792 (1998) (material misrepresentation concerning personnel is "basis for proposal rejection

or reevaluation of the award decision based on the faulty proposal") (citing *ManTech*).

16. *Cf. Planning Research Corp. v. United States,* 971 F.2d 736, 739–43 (Fed.Cir.1992) (upholding General Services Board of Contract Appeals decision to terminate contract because of "bait-and-switch," where agency ignored evidence of the scheme and abetted it after award); *Labat–Anderson, Inc. v. United States,* 42 Fed.Cl. 806, 855–56 (1999) (bad faith is not proven where contracting officer had no reason to question misrepresentation concerning commitment of proposed employee).

tion as Technical Director of the Center, including when he applied, when he was interviewed and by whom, and when he was first offered the position. The Court has allowed Orion to submit draft interrogatories to the Court for the Court's review, approval, and possible modification, by April 2, 2004.[17]

### C. Mr. Robert Rossow

Mr. Rossow was presented by Fiore as its Designated Project Manager until Mr. Zucconi could take over the position. Orion states that it would like to depose Mr. Rossow to determine his employment arrangement with Fiore—presumably hoping to show that, prior to the oral presentation, Fiore knew Mr. Zucconi was unavailable and thus promised Mr. Rossow the position. The information concerning Mr. Zucconi's availability, however, is more directly discovered from Messrs. Zucconi and Sanchez. Further, unlike the situation concerning Mr. Zucconi, there is no basis for any inference that Mr. Rossow's identification as a member of the Fiore management team could have misled the Army as to the technical merit of this team. Mr. Rossow participated in Fiore's oral proposal as the alternate Project Manager and it appears to be undisputed that he is now filling the Project Manager position. Orion has failed to demonstrate the need for information coming from Mr. Rossow, and the motion with respect to him is denied.

### D. Mr. Michael Schuck

■ Orion argues that the deposition of Mr. Schuck, the Army's Source Selection Authority, should be allowed on two grounds. First, Orion contends that the Army failed to enforce Solicitation requirements regarding Fiore's bid, and, since these decisions are unexplained, discovery is warranted to determine the Army's reasoning.[18] But this does not present the type of circumstance in which such questions may be posed to an agency decisionmaker. It is not a question, for instance, concerning the basis for an agency's subjective evaluation that one proposal is better than another. Rather, the only issue is whether or not requirements were enforced. Either they were or they were not, and if Orion's interpretation of the Solicitation is correct, no explanation can justify the failure to enforce these requirements. Orion poses a question of whether, not why. The administrative record suffices for this inquiry.

■ Second, Mr. Schuck's testimony is sought to provide evidence that the Government was complicit in Fiore's alleged fraud. Orion alleges that the agency conducted the evaluation of proposals in bad faith, and therefore limited discovery of the agency's final decisionmaker is warranted. *See Aero Corp. v. United States*, 38 Fed.Cl. 408, 413–14 (1997). As discussed above, however, "contracting officials are presumed to act in good faith when executing their procurement functions," *Aero Corp.*, 38 Fed.Cl. at 413, and it is improper for a court to inquire into the mental processes of an administrative decisionmaker absent a "strong showing of bad faith," *id.* at 412. *See Overton Park*, 401 U.S. at 420, 91 S.Ct. 814. Testimony from a procurement official should be the last resort.[19] Here, Orion presents no proof that in October, 2003, Mr. Schuck knew that the Government was going to hire Mr. Zucconi.[20]

---

**17.** Both sets of interrogatories have been timely submitted and filed.

**18.** The Court notes that it is not apparent from the face of the Solicitation why Mr. Schuck, the Source Selection Authority, would be the person responsible for waiving such requirements. This would appear more naturally to be the role of the Contracting Officer. *See* Solicitation § H.1.1, Admin. R. at 44 ("Contracting Officer is the only person authorized to approve changes· in any of the requirements under this contract").

**19.** *See, e.g., Impresa Construzioni*, 238 F.3d at 1338 ("[T]he agency should not be required to provide an explanation unless that presumption

[of regularity] has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious."); *id.* at 1341 (no discovery into reasoning of contracting officer "unless record evidence raises serious questions as to the rationality" of the decision).

**20.** In its motion for discovery, Orion did not state that it intended to ask Mr. Schuck about his dinner meeting with Mr. Symalla. The record already contains a memorandum from Mr. Schuck, Admin. R. at 65, and a signed declaration under oath from Mr. Symalla, Admin. R. at 307–09, discussing this subject. These statements appear to dispel any speculation that Mr.

Thus, Orion has failed to present to this Court any evidence of Mr. Schuck's alleged bad faith. *See id.* at 412, 91 S.Ct. 814. The motion with respect to Mr. Schuck is denied.

If the discovery that is being ordered reveals that Mr. Zucconi had been considered for the Army position before the decision to award the contract to Fiore was made, then the Court might consider the use of interrogatories to determine whether the SSA or the Proposal Evaluation Board members were aware that Mr. Zucconi might be unavailable to fill the positions proposed for him by Fiore and Orion.

### E. Documents

Orion would like the Government to produce documents relating to the selection of Mr. Zucconi as the Technical Director for the Center. Orion has not demonstrated that these documents are necessary, and this information may be obtained from Mr. Zucconi through interrogatories. This request is denied.

### CONCLUSION

The Court has determined that discovery concerning the availability and willingness of Mr. Zucconi to work for Fiore is warranted in this case. For the reasons stated above, the Court hereby **ORDERS** the following:

1. Orion's Motion for Discovery is **GRANTED** as to Fiore's President, Mr. Felix Sanchez, and as to the Army's employee, Mr. Harold Zucconi. This discovery is limited to the form of interrogatories to be answered by declaration under oath and is limited in subject matter. Orion has been allowed to submit interrogatories for the Court's review, approval, and possible modification. Once these have been reviewed, an order will issue directing the respective parties to obtain and serve the answers within two weeks of the date of that order.

2. Orion's Motion for Discovery is **DENIED** as to Mr. Robert Rossow, as to Mr. Michael Schuck, as to the request for production of personnel documents by the Army, and as to the use of depositions to obtain information.

3. This opinion and order shall be published as issued after April 21, 2004, unless the parties identify, with particularity, protected and/or privileged materials subject to redaction on or by that date.

**IT IS SO ORDERED.**

Symalla had engaged in lobbying activities dur-       ing this dinner.