**BETA ANALYTICS INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Maden Tech Consulting, Inc., Intervenor.**

No.  04–556C.

United States Court of Federal Claims.

Filed under seal, June 30, 2004.

Reissued, July 9, 2004 [1].

1.  This opinion was issued under seal on June 30, 2004.  The parties were given an opportunity to propose redactions, and have proposed none.  The opinion is now released to be published in its original form, with some minor, non-substantive corrections.

Mark L. Shaffer, Shaffer, Bock & Antonoplos, PLLC, Washington, DC, for plaintiff. Eric P. Bock, Shaffer, Bock & Antonoplos, PLLC, Washington, DC, of Counsel.

James D. Colt, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Kathryn A. Bleecker, Assistant Attorney General, David M. Cohen, Director, and Peter D. Keisler, Assistant Attorney General, all of Washington, D.C., for defendant.

William L. Walsh, Jr., Venable, LLP, Vienna, VA, for intervenor. J. Scott Hommer, III, Benjamin A. Winter, and Julia M. Kiraly, all of Venable, LLP, Vienna, VA, of Counsel.

## OPINION AND ORDER

WOLSKI, Judge.

Before the Court is a motion for leave to conduct discovery. The plaintiff, Beta Analytics International, Inc. ("BAI"), the intervenor, Maden Tech Consulting, Inc. ("Maden Tech"), and a third party submitted bids in response to Solicitation N0017–03–R–0044 ("the Solicitation"). The Solicitation sought a contractor to provide intelligence support for the United States Department of Defense's Defense Advanced Research Projects Agency ("DARPA"). Maden Tech's proposal was judged by an evaluation panel to offer the best value to the Government, and it was awarded the contract. *See* Admin. R. at 1003. On April 2, 2004, BAI filed a motion for a preliminary injunction after learning that its technical evaluation score was only four points lower than Maden Tech's score, while its price was $452,626.97 higher than Maden Tech's price. BAI argued that its bid was scored incorrectly, and that if scored correctly it would have received a higher score than Maden Tech and thus could have been awarded the contract. The Court denied BAI's motion for a preliminary injunction on April 7, 2004.

BAI subsequently requested leave to conduct discovery to supplement the administrative record. BAI would like to depose the three technical evaluators and the other two members of the evaluation panel, the contracting officer, and three DARPA employees who submitted affidavits in this case. It also wants to serve interrogatories and requests for production, and to depose other DARPA employees concerning the agency's organizational conflicts policy. BAI argues that discovery is warranted for two reasons. The first reason is that one evaluator's technical rating of BAI's offer relative to its competitors' was markedly different from that of the other two evaluators. The second is that the administrative record contains no information concerning BAI's claim of agency bias in the allegedly-disparate application of the DARPA organizational conflicts policy.

As part of the decisionmaking process, three members of the evaluation panel, Patrick Bailey, Dorothy Aronson, and Neva Gartrell, reviewed and scored the proposals of BAI, Maden Tech, and the third bidder. Admin. R. at 989, 1004. The panel members' scores were then averaged together to determine each offeror's final technical score. Admin. R. at 1004. On a scale from zero to one hundred, two members of the panel rated BAI's proposal superior to Maden Tech's, by four and by six points. The third, Ms. Gartrell, rated Maden Tech's superior to BAI's by 23 points. BAI alleges that in the categories of "experience" and "personnel" Ms. Gartrell's scoring was arbitrary and capricious because her scores appeared to be internally inconsistent and at odds with the Solicitation requirements, and because these ratings varied from those of the other evaluators. Pl.'s Mot. Leave Conduct Disc. Supplement Admin. R. at 6–7. BAI requests that this Court allow discovery "to supplement the record and demonstrate that Ms. Gartrell's analysis was an arbitrary and capricious disregard of the facts and of the Solicitation requirements for scoring while Mr. Bailey and Ms. Aronson have correctly analyzed BAI's proffered experience." *Id.* at 7.

In *Orion International Technologies, Inc.,* this Court recently reviewed the state of the case law pertaining to disappointed bidders' requests for discovery in bid protest suits. *Orion Int'l Tech. v. United States,* 60 Fed.Cl. 338, 339–40 (2004). The Court determined that there were two basic reasons that could justify discovery in such cases.

■ The first reason justifying discovery is that "supplementation might be necessary to help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision, particularly when a subjective value judgment has been made but not explained." *Id.* at 343. Regarding Ms. Gartrell's scoring of BAI's proposal, BAI admits that Ms. Gartrell did provide reasons for her scoring. Pl.'s Mot. Leave Conduct Disc. Supplement Admin. R. at 7. BAI argues, however, that Ms. Gartrell's explanations are contrary to the facts in the record and therefore her decision is arbitrary and

capricious. *See id.* at 2, 6. BAI apparently requests discovery to give Ms. Gartrell a second opportunity to explain her decision. Any further explanation by Ms. Gartrell, however, is likely to be discounted by this Court as a *post hoc* rationalization. *Orion,* 60 Fed.Cl. at 343. In any event, if BAI believes that Ms. Gartrell's articulated reasons demonstrate arbitrariness, this is a ground for its motion for judgment, and does not demonstrate that discovery is necessary to explain the agency's decision. BAI attempts to use the Gartrell scoring as the springboard for discovery into the thinking of all five members of the source selection panel—the three evaluators, the chairman and co-chairman—as well as that of the contracting officer. But the selection panel's decision is explained in the record, Admin. R. at 989–1005; the subjective value judgments of each of the evaluators are presented in the record, broken down by category and subcategory, *see* Admin. R. at 1012–1210; and judicial review does not require, nor normally will permit, any further inquiry into the mental processes of the decisionmakers, *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1339 (Fed.Cir.2001); *Aero Corp. v. United States,* 38 Fed.Cl. 408, 412–14 (1997).

■ This brings us to the second reason justifying discovery, as "the record may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record—such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations." *Orion,* 60 Fed.Cl. at 343–44. In the present case, however, BAI has not alleged that Ms. Gartrell (or, for that matter, any of the evaluators) acted in bad faith, relied on information that was omitted from the paper record, or participated in any relevant conversations not described in the record. To the extent that allegations of bad faith may be inferred from BAI's claims concerning Ms. Gartrell's scoring, however, the Court will consider this ground for discovery.

Although the historic rationale undergirding the presumption of regularity and good faith makes this concept a poor fit for cases in which Government agency officials are engaged in commercial transactions, it appears that this presumption "remains a fixture of the APA standard of review." *Orion*, 60 Fed.Cl. at 344 n. 14. As a consequence, "allegations of bad faith must rest on a strong evidentiary footing to overcome the normal presumption of regularity and good faith conduct by agency officials." *Id.* at 344 (*citing, inter alia, CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1579–82 (Fed.Cir. 1983)). On the other hand, rare indeed would be the occasions when evidence of bad faith will be placed in an administrative record, and to insist on this—and thus restrict discovery regarding bad faith to cases involving officials who are both sinister *and* stupid—makes little sense.[2] Accordingly, a party may rely on extra-record evidence to support its claim that discovery regarding bad faith conduct is necessary. But a plaintiff challenging a procurement decision must do more than merely argue that an agency's evaluation of its bid was erroneous to entitle it to discovery. *See, e.g., Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1324 n. 2 (Fed.Cir.2003).

Given the presumption of regularity and good faith, to put facts relating to bad faith in play a plaintiff must first make a threshold showing of either a motivation for the Government employee in question to have acted in bad faith or conduct that is hard to explain absent bad faith. *See Impresa Construzioni*, 238 F.3d at 1338. Second, the plaintiff must persuade the Court that discovery could lead to evidence which would provide the level of proof required to overcome the presumption of regularity and good faith. *See Orion*, 60 Fed.Cl. at 343 n. 11, 344. Here, BAI has not made the threshold showing concerning Ms. Gartell—it merely observed that her scoring of its proposal differs from that of her counterparts. *See*

*Info. Tech.*, 316 F.3d at 1324 n. 2. Innuendo or suspicion is not enough to demonstrate bad faith and thus justify discovery. *Orion*, 60 Fed.Cl. at 344; *see also CACI, Inc.-Fed.*, 719 F.2d at 1582.

BAI also requests discovery into whether DARPA properly conducted the organizational conflict of interest review, required by the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 9.504. This request is rooted in allegations of bias and, hence, bad faith. At the April 7, 2004 hearing, BAI proffered an affidavit from one of its employees stating that BAI was not allowed to bid on another DARPA contract because it was the incumbent contractor for the predecessor to the contract at issue and, thus, had a conflict of interest.[3] BAI surmises that the same analysis should have precluded Maden Tech from bidding on the contract at issue in this case, as Maden Tech is performing at least one other DARPA contract. BAI observes that there is no evidence in the record of any investigation into this alleged organizational conflict of interest. Pl.'s Mot. Leave Conduct Disc. Supplement Admin. R. at 8. BAI argues that this silence indicates that the organizational conflict of interest review did not occur. Pl.'s Resp. Def.'s Br. Opp'n Pl.'s Mot. Conduct Disc. Supplement Admin. R. at 5. It thus seeks discovery to determine whether or not this review occurred and whether Maden Tech should have been ineligible to bid on the contract at issue because of an organizational conflict of interest.

The FAR requires that "the contracting officer shall award the contract to the apparent successful offeror unless a conflict of interest is determined to exist that cannot be avoided or mitigated." 48 C.F.R. § 9.504(e) (2003). This provision also states, however, that "[i]n fulfilling their responsibilities for identifying and resolving potential conflicts, contracting officers should avoid creating unnecessary delays, burdensome information

---

**2.** *Cf. Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1025–26 n. 12, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (rejecting what the Court called a "stupid staff" test concerning the constitutionality of legislative enactments).

**3.** This affidavit, from Fred McDougall, was considered at the hearing but never formally filed in the case. *See* Tr. at 110:2–18, 127:1–22 (Apr. 7, 2004).

requirements, and excessive documentation. The contracting officer's judgment need be formally documented only when a substantive issue concerning potential organizational conflict of interest exists." 48 C.F.R. § 9.504(d) (2003). Thus, the lack of any mention of an organizational conflict of interest may merely indicate that the contracting officer failed to discover a "substantive issue concerning [any] potential organizational conflict of interest." *See id.*

To properly evaluate the strength of BAI's request for discovery into these matters, we must become at least somewhat acquainted with DARPA's arcane organizational structure. As is relevant for this case, at the top of the organizational chart is the Office of Management Operations ("OMO"). The Security and Intelligence Directorate ("SID") is one of three directorates directly below OMO. BAI was disqualified from bidding on a contract to provide support at the top level—the OMO—which included the responsibility of overseeing Information Assurance throughout the OMO and its directorates.[4] The OMO Information Assurance solicitation contained a special organizational conflict of interest requirement that "the contractor selected shall be prohibited from participating in any capacity in the bidding or performance of contracts, subcontracts, or proposals, (solicited or unsolicited), including assistance in the bidding or performance, which provide support to the Information Resources Directorate ['IRD'] or Security and Intelligence Directorate."[5] Both the IRD and SID perform Information Assurance functions, and thus the OMO Information Assurance contractor would be in a position to evaluate its own work if it were also the contractor for either of these directorates.

The contract at issue in this case (as well as the predecessor contract performed by BAI) is the contract to support the SID, and thus includes Information Assurance func-

tions.[6] *See* Admin. R. at 106. It is because of these Information Assurance functions that the special provision, quoted above, was included in the OMO Information Assurance solicitation. According to affidavits submitted by defendant in response to the organizational conflict allegations, the other DARPA contract being performed by Maden Tech—supporting the Technology Integration Center and the Technology Demonstration Center at the OMO level—does not involve Information Assurance oversight or tasks. Little–Kopach Decl. ¶ 3; Lehr Decl. ¶ 4. Thus, the special provision prohibiting SID contractors from performing the OMO Information Assurance contract was apparently not included in that other OMO contract, as the particular conflict addressed by that provision is not manifest.[7]

Of course, the FAR conflict of interest review requirement still applies, as does the general organizational conflict of interest provision included in the Solicitation. This provision, number HQC–2–0037, defines "Organizational Conflict of Interest" to mean "that because of other activities or relationships with other persons, a person is unable or potentially unable to render impartial assistance or advice to the Government, or the person's objectivity in performing the contract work is or might be otherwise impaired ...." Admin. R. at 126. As discussed above, nothing in the record reflects whether such a review of Maden Tech's eligibility to bid on the contract at issue took place.

All of the information that DARPA would need to make this determination, however, was included in the record. In the past performance section of its offer, Maden Tech identified the DARPA Technology Integration Center/Technology Demonstration Center contract. Admin. R. at 378. This other contract's existence was not hidden from the decisionmakers. And, as noted

---

4. *See* McDougall Aff. ¶ 5; Sosdian Decl. ¶ 2; Lehr Decl. ¶¶ 4–5.

5. *See* Ex. B. to McDougall Aff.

6. *See* Lehr Decl. ¶ 3; Little–Kopach Decl. ¶ 2.

7. BAI asserts, without citation, that the Solicitation for the contract at issue in this case con-

tained this same "Special Contract Requirement" provision. Pl.'s Resp. Def.'s Br. Opp'n Pl.'s Mot. Conduct Disc. Supplement Admin. R. at 4–5. The Solicitation does not contain this provision, *see* Admin. R. at 135–37, nor would its inclusion be at all relevant—as Maden Tech's other contract was not in support of the IRD or SID, but in support of the OMO.

above, the FAR provision does not require any formal documentation of the conflict of interest review except when "a substantive issue concerning potential organizational conflict of interest exists." 48 C.F.R. § 9.504(d) (2003). Given the presumption of regularity and good faith, a heavy burden rests upon BAI to demonstrate that the absence of documentation reflects a failure to perform the organizational conflict of interest review. *See Impresa Construzioni,* 238 F.3d at 1338.

Even when an explanation of an agency decisionmaker's reasoning is not required by law, the Court may still require an explanation "if such an explanation is required for meaningful judicial review." *Id.* But a party must show more than the mere absence of an explanation, when none is legally required, in order to secure leave of court to obtain this explanation—otherwise, the Court would be substituting its own documentation policy in place of the one contained in the FAR. In this case, the only argument raised by BAI to justify discovery, other than the lack of documentation, is the bias BAI infers from DARPA's enforcement of the conflict provision against it regarding the OMO Information Assurance contract. *See* Pl.'s Mot. Leave Conduct Disc. Supplement Admin. R. at 8; Pl.'s Resp. Def.'s Br. Opp'n Pl.'s Mot. Conduct Disc. Supplement Admin. R. at 4–7.

The affidavits submitted by defendant, accepted by the Court for this limited purpose, contain assertions that the critical factor that prevented BAI from bidding on the Information Assurance OMO contract—that it would be in a position to review its own work for the SID—is not implicated by Maden Tech's OMO contract. *See* Lehr Decl. ¶¶ 3–5; Little–Kopach Decl. ¶ 3; Sosdian Decl. ¶¶ 2–3; *see also* McDougall Aff. ¶ 5 (BAI's affiant). BAI did not rebut these assertions nor did it present evidence demonstrating any potential conflict of interest posed by Maden Tech's OMO contract. BAI has submitted no evidence supporting a motivation for bias and has not identified any conduct that is hard to explain absent bad faith. Under the controlling Federal Circuit decision in this area, *Impresa Construzioni,* BAI has failed to carry its "heavy" burden to overcome the presumption of regularity and justify discovery. *See* 238 F.3d at 1338.

In *Impresa Construzioni,* a contracting officer apparently determined that a business met the responsibility standards and could be awarded a contract to perform services at a naval air station—a determination which requires no documentation under 48 C.F.R. § 9.105–2(a). 238 F.3d at 1334–35, 1337–38. This determination of responsibility was made despite information in the record that the person who formerly controlled this business was convicted in an Italian court of engaging in bid rigging and intimidation of competing bidders on previous contracts at the same air station. *Id.* at 1328, 1338. Although the business might still have met the responsibility standards because it was then run by a court-appointed receivership, this determination was one that the Court found to require an explanation—because of the "record evidence suggesting that the agency decision is arbitrary and capricious." *Id.* at 1338.

Unlike the plaintiff in *Impresa,* BAI has failed to present any evidence suggesting that the agency's conflict of interest determination was arbitrary and capricious, and thus has not overcome the presumption of regularity. This Court must thus presume the contracting officer executed his duties in the regular manner and in good faith. Therefore, because 48 C.F.R. § 9.504(d) states that the contracting officer need not make an official notation if he does not believe that there is a conflict of interest, this Court must assume that the contracting officer not only performed the conflict of interest review, but that he did not discover any conflicts. 48 C.F.R. § 9.504(d) (2003); *see also* 48 C.F.R. § 9.506(b) (2003) (stating that a contracting officer need not put anything in writing unless he decides that "a particular acquisition involves a significant potential organizational conflict of interest"). Discovery into this matter is not warranted.

For the reasons discussed above, this Court hereby **DENIES** BAI's motion for leave to conduct discovery.

**IT IS SO ORDERED.**